Thank you very much your honor. In the case of the court my name is Michael Bigelow and I represent Chief Bonnett. On the issue of extortion, I got no answer. The law says that it is a bona fide case, a bona fide domestic condition is entitled to be investigated. The question I've got is, who makes the determination whether it's bona fide? And at what point does it matter in this case? Well isn't it informed by what the P.O.P. psychologists report to the district court? No. It was like a 42 page opinion. No. Without any detail. Because it helps the investigation. Right. That informs the district court who's the ultimate finder of facts. That's like the proof on which the court relies in making the factual finding that your client was malingering. That's the end product. Correct. Who makes the inane determination? Did you have it being investigated? Of course. The statute provides that it can be either the court or counsel or both, but ultimately the court orders the 42-48. Exactly. Exactly. If the person who makes the determination in this case initially, as well as George also said, my client is mentally incognito, she made the initial determination, a verodic determination. It was a bona fide determination. It was sincere. It was sincere. There's a question that your client or your lawyer was acting in good faith. The problem is if you've got a factual finding, that after however many weeks or months of evaluation, the psychologist tested him and the test came back showing that he was malingering. That's on trial counsel. That's on the client. Maybe it's not. If the corporate lawyer knew. I think all of those facts are there. But we've got a lawyer. We've got a trial lawyer. There's a lawyer. Not a psychiatrist. Not a psychologist. He's got no idea. This guy presents to her and he doesn't say, I'm crazy. He doesn't say, I want to be out in public. We don't know what he said to her. Exactly. Maybe he was willing to go to the court and said, I've got some real concerns about my client. Correct. Now, he's actually not come to the court. I've always been a nickel for every case I've been involved in over the years. Every case I've been involved in over the years where down the road the lawyer says or the judge says or somebody says, you know, this guy really should be evaluated way, way, way back. Okay. So, you've got a lawyer who says, okay, this guy needs to be evaluated. And so, they ship him off. Now, the client, we don't know what the client says because we didn't have a hearing on it. We didn't have any kind of an evidence. I'm not sure that the client or the lawyer would want to admit evidence to the things that the client had been telling him. Well, I. He gets down. By submitting him to this evaluation, by submitting him to this evaluation, she exposes him to two levels, to an obstruction of justice. Now, apparently, she was dead wrong. She shouldn't have done it. Based on the information we have, we don't know that, do we? Well, I don't understand your position. Are you conceding that a lingering can be the basis for an obstruction of justice that is also a failure to comply with those who are trying to get them to come? Those are two questions. Oh, wait. Those are two questions. Can a lingering be? Yes, a lingering can be. Can. Had she. Had she initiated. Had she. No, no, no. A lingering can be the basis for an obstruction of justice. And so if. And so that if there is a supported finding that he did not cooperate with the, those who were trying to conduct the comments, the evaluation, he could be subject to a lingering obstruction of justice. Maybe not. Maybe he is. Maybe. We don't know. Maybe, Your Honor, maybe, maybe his refusal to participate in the testing and the evaluation, maybe his refusal was, hey, my lawyer railroaded me into this thing. I'm not crazy. I'm here because she wanted me here. I don't want to participate. I'm not crazy. If I participate, I'm telling them I'm crazy. If I don't participate, I'm telling them I'm not. But the finding of a lingering was made on more than his refusal to cooperate. It was also made on the differences that the custodial staff recognized between how he interacted with other inmates when the doctors turned around and how he interacted when the psychologists came in to evaluate him. Let's talk about that for just a moment. Perhaps, we don't know this. Perhaps staff has got this guy in the room when they're doing the evaluation and they're saying, you know, this patient never came here. Why is he here in the first place? He got here because he lingered early on. He convinced his lawyer. He convinced his lawyer that he was incompetent. He was insane. He should never be here. At what point does the lingering begin? I know what the PSR says. The PSR evaluates it only on what staff determine. Okay? Only local. I don't think that's accurate. No. It comes up suddenly. I just want to ask you something here. What rule were you proposing? You said the lingering is sufficiently defined and the instructions are enough. What rule were you proposing? That if the lawyer is fine in petitions in court, then he can't be used. But if the client petitions the court, he can't. What was the rule? Because, you know, you're admitting that it can be obstruction, so how does that align? I'm admitting the lingering. Yes. Obstruction, yes. I mean, the cases say they can and this works. It's not going to go to court. It's not going to go to court, yes. But I think that the district court ought to be very clear about what actually constitutes the lingering. Was the lingering occur initially in the district court? Was he feigning insanity, for lack of a better term, in the district court and somehow convinced his lawyer to go to the court? I'm a district attorney. So I want to know who can come in to me. I'm sitting here and I want to know what I'm supposed to do when the lawyer tells me they have a concern about the competence. So you base it on counsel. What do you base that on, counsel? What do you base that on? Counsel, if you can have them examined. Did you get a CJA appointment for a psychiatrist to have them evaluated? You're not a psychiatrist or a counsel. But that's the same thing that happened here. No, no, no, no, no, no, no. Well, you're suggesting that the court should first allow the defense to conduct an in-camera evaluation of its own and then decide whether or not they're going to release the results. Let me answer my question. And then decide whether or not the defense lawyer wants to release the results to the court. Is that what you're suggesting? It's not indicated to me. It's the district court. No, excuse me. I can request experts. As a CJA, I can request experts at any point. What was the objection that was made in the district court to what might have happened here? That he was malingering under whatever rules are out of court. That the finding was out of court. There was sufficient evidence to support malingering. See, the problem I have with this, Your Honor, the problem I have with this is we don't know where the malingering, what the focus of the malingering was. Was it malingering because court said he said, or is it not? It was the determination of malingering by your own admission, and it's a legitimate basis to order an enhancement. I'm not sure, as a matter of law, what difference it made. Because I'm not convinced it was actually malingering in this case. Okay. Your Honor, it's so hard to hear you repeating because I have to. If you take the position you do, and the report comes back that he's malingering, and the corporation offices is going to recommend that an objection be applied, you have a factual issue, which is what's he malingering about, and you disagree with the report. Why wouldn't you have been, and it wasn't you who had seen this, why wouldn't it have been, as far as you're aware? Well, Your Honor, we'll get into this, but you remember what I hear within the law, and I'm going to put my own psychiatrist up to show that what happened is this. But when you have a factual issue, once you have the report and the probation department will document it, then it seems to me people face it so frankly, when the government suggests that you have an opportunity to contest it, and there's nothing you can contest it. But a lot of his malingering was the binding, a lot of the finding was based on his refusal to participate in the examination. But that's the bottom line, I think. I'm sorry, Your Honor. That's only part of it. You keep overlooking all the other evidence that's recounted in the report of how he behaved outside the presence of a testing environment. And it doesn't necessarily mean, number one, that he's crazy, and number two, it doesn't mean that he's malingering. I mean, there are crazy people out there. But it looks at the totality of all the evidence before it, and frankly, by my read of the report, it's a pretty strong record to support the district court's factual finding that he was. So if your argument is essentially there isn't enough evidence in that report to justify the district court's finding, I'm having a hard time declaring that clear error on appellate review. I think that that was the objection that was made at trial, so I don't think that this is clear error. I think it has to be clear error. It's not as a factual finding. And I think it would be a mistake. Okay. Well, let's hear from you. I'll give you a couple minutes. Good morning, Your Honor. May it please the Court, I'm Matthew Morris. I represent the United States, and I was the counsel for the appellate report below. I do want to just correct on perhaps a misperception the court might have gotten from the argument a moment ago. There was never an objection to the diagnosis in my directory. There's no factual dispute whether this court or the court below. Judge Whitley, as you pointed out, there was the opportunity. If the defendant wanted to contest the diagnosis, he could have contested what was said in the report. He could have contested the facts that were contained in the BSR. He never did either. I would like to understand the objection to him. What was the objection? Serious legal objections, Your Honor. There are basically three arguments that I read that are varying modes of robustness. One was an argument about a finding of competence should not lead to the obstruction of advancement, and we agree that that was not happened here. There was no finding of competence. There was a finding later, which is different. The second argument was one sentence, which was, there's no evidence that was done with the intent to display. That's not contained either in the plain language of Section 3C.1.1 or in any of the application notes. There certainly isn't in any of the courts' precedent on this. The third argument was the one that was really the most robust, but even then it took a couple of hours, took about an age and a half, and that's the Sicilium argument, that by punishing a defendant for false information and the incompetence in your evaluation, it is going to shield the defense attorney's counsel and office, the defendant, with respect to his constitutional rights. That argument really is disposed of, withdrawn again from the Supreme Court. The same argument was made there in the context of applying obstruction for perjury, and the Supreme Court said nonsense. Do you have the constitutional right to testify? You don't have the constitutional right to testify falsely. Likewise here, the defendant has the constitutional right not to be held to trial if he presents. He does not have a constitutional right to present false information as part of that process. That is what was discussed in the PSR. All of this talk about what might have happened between him and his lawyer is not relevant in this case. The PSR replied to the incapacity based upon, quote, of his mental health condition as part of a court-ordered psychiatric examination. Just a second. Why did the government not testify in court, which is not the actual time in which the court is going to hear it? I'm assuming that it's an ancient piece of evidence to help inform the court as to whether or not there is a court here. The answer to that, Your Honor, is that only portions of that report, which were raised below, are before the court. So that's within the government's supplemental interest of the record. We obtained a copy of the full report that was filed under seal, and it was clearly transmitted to the district court, and it was the subject of discussion. It's actually quoted in a way, I think, in the government's sentencing report. So why didn't you give us the entire exhibit that was before the district court at sentencing? I thought we had included the portions that had been discussed both by the PSR and by the supplemental interest of the record. All we did was the arguments and the memos and the briefs. This is what I'm referring to, Your Honor. So no, we didn't file the actual file. I'm suggesting to you, don't do that again. Yes, sir. Give us the full report. Absolutely, Your Honor. Moving on, again, the defendant never objected to any of the facts. Nothing contained in paragraph 16 of the PSR was the subject of fact. There was no dispute, and it was never disputed, either the opening brief or the reply brief here. In fact, you can see that below, that he refused to take part in portions of it. Our position below is that under Funt, Adam could have supported the obstruction enhancement all by himself, but we also argue that the remainder, even if he had complied with everything and had remainder, Adam also could have complied with all of the other circuits that looked at this at some sufficient level. And finally, Your Honor, under the discretion of Schilling, the circuit subdivision in Breyer takes into account more F than how penalized it is. I'm going to extend simply every circuit that's looked at since then has reached the same conclusion, as much as there's no Schilling here, because whatever happened to the evidence lawyer prior to the corpse order, the defendant faced a fork in the road once he was patented the opiate discipline. He can continue whatever charade he'd been playing with his lawyer, or he can be truthful. These are now people who are trying to obtain information for the district judge so that the district judge can determine and follow his constitutional obligations. When he chose to present false information to those officers, people who are submandated by the defendant in court, that was when he committed a service of no justice. I'll turn briefly to the distribution for Athena Valley. Are there any other questions about the obstruction enhancement? And on the distribution for Athena Valley, the only argument made here was that there should have been a Rule 32 proceeding. Under this court's presidency of Carter and Christensen and Petrie, the all-the-time Rule 32-gerratured program is one of the specific facts in the PSR is challenged as being inaccurate. That never happened here. The PSR, paragraph 19, is the relevant paragraph. It states that the defendant, in the course of training, has exchanged child pornography with another person. There is this exchange where the other person says, do you have girl stuff? The defendant says, I can give you girl stuff. I have lots of girl stuff, but can you give me boy stuff? That is exactly what the defendant might say is at this point in the exchange for Athena Valley. The only argument made below is that there is no evidence of transferring money. That's a different enhancement. It's explicitly covered in the evidence that giving child pornography in exchange for respect to child pornography in return is applicable to child pornography. 2G2102. So there's no other questions here. All right, so to ask this question of destruction, to ask this court to align itself with all the other circuits, it sounds like the defendant here, in argument, has conceded that money laundering can be a basis for destruction. And then, on admission of both, the answer is to ask the court to affirm the sentence that was opposed by Judge Bates. Thank you very much. I'll give you a couple minutes, and we'll run along to the next slide. Here we go. Thank you very much. Although I did take up the hearing. Anyway, the only point that I would make, as I did earlier in the counsel alluded to and I mentioned, is the chilling effect of it. I can guarantee you that, as a trial lawyer, I am never going to refer somebody to the court of formal commitment. Unless I spend more CJA money, get them evaluated first, to make sure that I'm not going to run afoul of a judge. But as a defense lawyer, if you had a good faith belief that your client was not competent to be a prosecutor, I can't believe that you would bring that issue to the court. Maybe it would be in the form of a motion for expert witnesses to have him evaluated by your own expert. That's different than what happened here. That is exactly what I would do. If I have a good faith belief, and I would do it without a good faith, I would never spend CJA money on that. I mean, of course that is chilling. No, I'm going to have them evaluated. And that's not good practice. But I guess my inherent question is that there is risk in every choice that a trial lawyer makes with regard to the prosecution or defense of a case. And you know that. It's a calculated risk that you have to take sometimes. You might not like the results. I'll make it up the number. I don't know what the percentage is. The percentage of findings of incompetence under the federal system, the way that we've done it over the years, is really, really low. So let's say it's 30%. 70% are going to be found to be incompetent. So I run the risk. I run the risk of some staffer saying, He may be right. We don't know. I run the risk. He isn't going to do that. We're going to find, we're going to take it by ourselves. Thank you very much. I appreciate the question. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you.
judges: Schroeder, Tallman, Whaley